# 99 DTA 196

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**

MAXON ENGINEERING SERVICES, INC.
Recurrente

v.

AUTORIDAD DE ENERGIA ELECTRICA
Recurrida

Núm. KLRA-98-00778

San Juan, Puerto Rico, a 7 de junio de 1999

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano
y los Jueces Aponte Jiménez y Giménez Muñoz

Alfonso de Cumpiano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Nos corresponde decidir en este recurso si la Autoridad de Energía Eléctrica (A.E.E.) erró al determinar que en el proceso de adjudicación de una propuesta de precios para la implantación de un sistema integrado de manejo de recursos, la agraciada Intergraph Corp. no modificó, contrario a las especificaciones, los términos y condiciones requeridos por la AEE y si ello es motivo para ordenar la cancelación del contrato otorgado a dicha entidad.

### I

Los hechos en que se basa la controversia, según el expediente, surgen luego de que la Junta de Gobierno de la

A.E.E. (la Junta) autorizó al Director Ejecutivo, mediante la Resolución núm. 2723 de 30 de junio de 1998, a solicitar propuestas a tres compañías que habían cumplido con los requisitos técnicos requeridos en una previa subasta, cuyo propósito fue reemplazar un sistema mecanizado (DCMS) para cumplir con el formato de fecha para el año 2000. Conforme la aludida resolución, se autorizó por la Junta proseguir con las gestiones para la implantación de un sistema de administración integrado de recursos bajo un proceso de solicitud de propuestas, toda vez que en el proceso de subasta que se llevó a cabo a esos fines, las compañías licitadoras fueron declaradas no respondientes a los términos del contrato. Además, en ese previo proceso medió exceso del costo estimado del proyecto. Por tanto, según la resolución, se dividió el proyecto en fases, se expresó la necesidad de agilizar su adquisición y se autorizó solicitar propuestas para la implantación de las fases I y II del proyecto a tres compañías que cumplieron con los requisitos técnicos. Finalmente, la resolución autorizó un presupuesto preliminar de $25 millones para todas las fases, a completarse en un período no mayor de tres años.

Las tres compañías que participaron en la propuesta de precios fueron: Intergraph Corp. (Intergraph), Maxon Engineering Services, Inc. (Maxon) y Lógica Inc. En comunicación de 25 de noviembre de 1998 se le informó por la A.E.E. a Maxon que la solicitud de precios LJA-36773 fue adjudicada a Intergraph, por ser el postor más bajo que cumple con las especificaciones. Maxon solicitó reconsideración y protestó la adjudicación efectuada. Alegó que Intergraph utilizaría a World Wide Services como contratista primario, que Intergraph cambió los términos y condiciones incluidos en la invitación y en el Artículo 24 del Reglamento de Subastas y que Maxon resultaba ser el postor más bajo que cumplía con las especificaciones.

El juez administrativo designado por la A.E.E. para evaluar los planteamientos de Maxon explicó en su resolución que el proceso utilizado no era el de subasta, sino el de adquisición de bienes o servicios por negociación, lo que había sido autorizado por la Junta en la Resolución núm. 2723, *supra.*

El planteamiento de la utilización de World Wide Services por la licitadora agraciada lo denegó por infundado, al exponer que ambas compañías están en el registro de proveedores, que World Wide Services pertenece a Intergraph y que a la firma del contrato se dilucidaría si la responsabilidad ante la agencia sería de una o ambas compañías. Sobre los alegados cambios en los términos y condiciones propuestos por Intergraph, el Juez administrativo de la A.E.E. determinó que las excepciones tomadas por ésta en cinco renglones, y a las que nos referiremos posteriormente, no constituían cambios luego de justificar cada uno de los cuestionamientos de Intergraph. Finalmente, concluyó que aun si fuera cierta la alegación de que la propuesta de Intergraph fue no respondiente, Maxon no podía ser la acreedora, porque su propuesta contiene desviaciones que la hacen no respondiente. Por tanto, denegó la reconsideración.

Maxon presentó este recurso en el cual alega que la A.E.E. erró al declarar no respondiente su oferta, al declarar respondiente la de Intergraph a pesar de mediar cambios en los términos y condiciones de venta y/o servicio en contravención de la invitación y del Reglamento de Subastas. Plantea, además, que la licitación fue para una fase y se consideraron por la A.E.E. las cuatro fases del proyecto para la adjudicación. Acompañó el recurso, entre otros documentos, con copia del *"Request for Proposal LJA 36773"* para sustentar su alegación de que era impermisible someter cambios en los términos y condiciones del contrato.

Solicitamos mediante resolución la posición de la A.E.E. En su oposición de 8 de febrero de 1999, ésta explicó que el proceso llevado a cabo fue por negociación, aclaró que la invitación a licitar se acompañó con el contrato, en donde surge que debían incluirse las cuatro fases del proyecto. Argumenta que la propuesta de Maxon fue descartada por el Comité Técnico que la evaluó, el cual determinó que había requerimientos técnicos confusos, especialmente en cuanto al sistema y al *"hardware"* y falta de especificación, y que la posible inclusión de *"hardware"* adicional podría aumentar el costo total de esa propuesta. En cuanto a las excepciones tomadas por Intergraph de ciertos términos y condiciones del contrato, la A.E.E. reiteró las justificaciones de la resolución

recurrida, y rechazó que hubiese mediado cambio en alguna condición o término. Indicó que se trataba de expresiones aclaratorias o que por improcedentes, se tenían por no puestas. No informó sobre el resultado de las negociaciones a las que aludió tanto la resolución recurrida, como la oposición.

En resolución de 1ro. de marzo de 1999 ordenamos a la A.E.E. elevar el expediente original, señalando los documentos que debían ser sometidos, incluyendo *"todas las normas que rigieron el proceso de solicitud de propuestas en este caso"*, a los fines de determinar si expediríamos o no el recurso. La A.E.E. sometió copia de algunos documentos. En resolución de 19 de marzo, señalamos los documentos o información que no fueron sometidos por la A.E.E., específicamente las normas que rigieron el proceso y la opinión legal sobre dicho proceso a que se hace referencia en el expediente, lo que nos impedía determinar si dichas normas permitían el relevo de requisitos, si los licitadores estaban igualmente informados de éstas y si la magnitud del impacto económico de las excepciones tomadas por Intergraph podría o no alterar significativamente su propuesta. Ante ello, expedimos el auto, solicitamos de la A.E.E. la información omitida y dirigimos a las partes a someter escritos simultáneos sobre las interrogantes planteadas por este Tribunal y los errores alegados en el recurso sobre el incumplimiento de Intergraph al tomar excepciones, a la luz de lo expresado en la invitación a la propuesta.

El 16 de abril, la A.E.E. sometió el expediente con la certificación que le requerimos, aunque sin informarnos sobre todas las normas que rigieron el proceso, ni sobre la opinión legal que fundamentó éste. Nos informó en esa comparecencia que el contrato se había firmado con Intergraph, sin cambio alguno. Del expediente surge que el contrato se había firmado desde el 22 de diciembre de 1998. Previo señalamiento en resolución de 6 de mayo sobre la forma y el momento en que la A.E.E. sometió información a este Tribunal relevante para la dilucidación de este recurso, solicitamos de la A.E.E. copia del contrato entre ésta e Intergraph según firmado y que nos informara cualquier variación que se hubiese efectuado durante la etapa de negociación en cuanto a precio o condiciones.

La A.E.E. compareció, según solicitado, e informó que no medió cambio o variación de parte de Intergraph al contrato según sometido en la invitación a propuestas. Ambas partes sometieron mociones adicionales sobre sus respectivas posiciones. Procedemos a resolver.

## II

Nuestra función revisora de las decisiones administrativas queda delimitada bajo varios principios recogidos en la ley y en la jurisprudencia. Entre éstas, son ampliamente conocidas que las determinaciones de hechos de las agencias se sostendrán si se basan en evidencia sustancial que obra en el expediente administrativo y que las conclusiones de derecho serán revisables en todos sus aspectos. Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U., 3 L.P.R.A. sec. 2175). Por su función especializada, las determinaciones de las agencias merecen deferencia y sólo se intervendrá cuando medie abuso de discreción, error o arbitrariedad.

A los fines de evaluar si la decisión de la agencia está basada en el expediente, es contraria a derecho o es arbitraria, las partes tienen que colocar a este Tribunal en condiciones de conocer la prueba del expediente administrativo que dio base a la adjudicación y las normas que rigieron el proceso. La dificultad con que nos confrontamos al evaluar este recurso consiste principalmente en que no tuvimos el beneficio del expediente completo, ni se nos ha provisto de un cuadro claro sobre el conjunto o interrelación de las normas bajo las cuales los licitadores fueron invitados a la propuesta de precios. En casos como éste, donde se procuran servicios altamente técnicos y especializados, nuestra intervención se dirige esencialmente a examinar las normas y reglas que rigen los procesos de adquisición por el Gobierno, su aplicación a las partes, el trato igual y si quedan protegidos los mejores intereses gubernamentales.

A tenor de lo anterior, examinemos, en primer término, las normas legales y reglamentarias que tienen relevancia con los planteamientos del recurso.

La Ley de la Autoridad de Energía Eléctrica, Ley Núm. 83 de 2 de mayo de 1941, según enmendada, 22 L.P.R.A. secs. 191 y ss., dispone en su sección 15 que todas las compras y contratos de suministros o servicios, excepto servicios personales, deberán hacerse mediante anuncio de subasta. Las excepciones al requisito de subasta se permiten: cuando la cantidad estimada no exceda de $20,000.00; cuando se trate de una emergencia que requiera inmediata entrega de equipo o ejecución de servicios; cuando se necesiten equipo o servicios suplementarios previamente contratados; cuando se requieran servicios de trabajos profesionales o de expertos y la A.E.E. estime, en interés de una buena administración, que deban contratarse sin anuncio de subasta, cuando haya sólo una fuente de suministro; cuando la compra de combustible se haga a países extranjeros, bajo las disposiciones de ley. 212 L.P.R.A. sec. 205 .

Los procesos de subastas gubernamentales se llevan a cabo conforme normas legales, reglamentarias y jurisprudenciales que les son aplicables. La L.P.A.U. dispone que los procedimientos de adjudicación de subastas serán procedimientos informales, cuya reglamentación y términos serán establecidos por las agencias. Dicha ley también contempla las medidas de reconsideración y de revisión judicial para la impugnación u objeción de una subasta. Secciones 3.20 y 4.2, 3 L.P.R.A. secs. 2169 y 2172. En atención al mandato de ley, la A.E.E. adoptó un Reglamento de Subastas (el Reglamento), que rige ese proceso ante dicho organismo. Apéndice del recurso, exhibit 7, págs. 36-44.

Por otra parte, el proceso de contratación directa o de negociación o licitación de precios para la obtención de bienes o servicios, no contiene disposiciones propias en la L.P.A.U., ni está contemplado en el Reglamento de Subastas de la A.E.E. Salvo por las limitadas excepciones a la subasta que contempla la Ley de la A.E.E. para la contratación directa a las que nos referimos antes, no existen en ésta disposiciones que rijan los procesos de la contratación o negociación directa de las propuestas de licitación de precios.

Corresponde, pues, analizar las guías y directrices que estuvieron disponibles a los licitadores para participar en este proceso.

En el caso bajo nuestra consideración, el método utilizado en sustitución del proceso de subasta que fue inicialmente seguido para la adquisición del sistema, no fue el de contratación directa sino uno de naturaleza competitiva consistente en la licitación de propuestas de precios. La autorización para así proceder fue dispuesta por la Junta en la Resolución núm. 2723, luego que el consultor jurídico opinara que podía llevarse a cabo este proceso, como surge de dicha resolución. ■ Su justificación se basó en que había que agilizar el proceso para atemperar el sistema al año 2000.

La Junta específicamente señaló las tres compañías que cumplieron con los requisitos técnicos de la subasta a las cuales podía solicitarse propuestas de precios. En otras palabras, estas compañías no cumplieron con los términos del contrato, pero sí con los requisitos técnicos que fueron requeridos para la implantación del sistema. La resolución no dispuso bajo qué normas o reglas se llevaría a cabo ese proceso. Sólo estableció término para la fase I, antes del año 2000 y un presupuesto preliminar de $25 millones para todas las fases, a completarse en un período no mayor de tres (3) años.

Un examen de los diversos documentos sometidos por las partes revela que la invitación para la licitación en cuestión (LJA 36773) se hizo en formulario titulado *"Request for quote and invitation to bid"* igual al utilizado para la invitación a la previa subasta (LJA 28595). Apéndice del recurso, exhibits 1 y 2, págs. 1-9. En lo que nos concierne, en el formulario de la licitación de precios se hizo referencia a un sistema integrado según descrito en el documento *"Request for proposal"*, mientras que en el de la subasta, se describieron los elementos que constituían dicho sistema. En ambos, se hizo referencia a instrucciones especiales *"para esta invitación a subasta"* y se incluyó la siguiente limitación:

Los licitadores que incluyan en su cotización sus términos y condiciones de venta de servicios, serán declarados no respondientes. Favor ver el Artículo 24 de las instrucciones a los licitadores. Apéndice del recurso, exhibit 1, pág. 3 y exhibit 2, pág. 3.

El documento titulado *"Request for proposal"*, fechado junio de 1998 sometido por la A.E.E. como parte del expediente, contiene un contrato para la implantación del sistema y en su Artículo 3 describe las cuatro (4) fases en las que éste será desarrollado. Dicho contrato consta de diversas cláusulas con las condiciones generales que regirán la relación entre el licitador agraciado y la A.E.E. Como parte del expediente están incluidos diversos documentos sobre las especificaciones técnicas que describen en detalle las fases del sistema integrado junto con apéndices que ilustran mediante diagramas y otras descripciones los requerimientos para su implantación.

La evaluación de las propuestas fue llevada a cabo por un Comité que sometió informe en octubre de 1998, el que fue aceptado por el Director Ejecutivo de la A.E.E. El Comité analizó las propuestas y concluyó que la de Lógica, Inc. debía rechazarse por ser la más costosa, así como la de Maxon, por ser la segunda más costosa, porque algunos requisitos técnicos eran confusos y por posibles aumentos en el precio total. Recomendó a Intergraph como la que sometió la propuesta más satisfactoria y por ser el menor postor, sujeto ello a acuerdos en la etapa de negociación del contrato.

En el informe del Comité evaluador se hizo mención de las excepciones expuestas por Intergraph, que se describieron como asuntos menores, en los siguientes términos:

*"Intergraph Corporation accepted the commercial terms and conditions with some minor issues to be discussed during contract negotiations. During the presentation of their proposal these issues were discussed with the evaluation team and our Legal Division representative, Karem M. Loyola Peralta. They are related to the performance and payment bonds execution procedures and that the amount be distributed by phase. It is attorney Loyola's opinión (Appendix D) that the issues can be resolved during contract negotiations. The proposal submitted by Intergraph was the lowest cost of all. The cost per phase was as follow:*

*Phase 1    $ 6.16 millions*

*Phase 2    $ 4.61 millions*

*Phase 3    $12.87 millions*

*Phase 4    $ 2.81 millions"*

Respecto a la propuesta de Maxon, el informe del Comité expresó lo siguiente:

*"Maxon Engineering Services did not take any exemptions to the commercial terms and conditions. Its proposal was the second highest at approximately 3.4 millions over the lowest proposal. The cost per phase is divided as following.*

*Phase 1    $6.82 millions*

*Phase 2    $5.62 millions*

*Phase 3    $13.78 millions*

*Phase 4      $ 3.61 millions"*

Finalmente constan en el expediente comunicaciones de la A.E.E. a los licitadores solicitando aclaración de sus propuestas para el 25 de septiembre de 1998, en cuanto a los aspectos técnicos. Maxon sometió su aclaración con posterioridad a las otras, el 2 de octubre de 1998, luego de solicitar tiempo adicional y oportunidad de hacer una presentación al Comité. Según el informe del Comité, se tomaron en cuenta las clarificaciones de los licitadores. En dicho informe se indica que se llevó a cabo una reunión con el menor postor (Intergraph) y que al determinarse que éste cumplía, no se solicitaron presentaciones a los otros.

## III

Analizados los planteamientos del recurso a la luz de los documentos revisados, concluimos que la contención de Maxon de que fue el postor más bajo, y que erró la A.E.E. al declarar su oferta no respondiente, no tiene base en el expediente. Independientemente de las excepciones tomadas por Intergraph, Maxon no ha demostrado cómo su propuesta hubiese sido la menor, de haber presentado excepciones similares, sobre todo cuando el informe del comité evaluador determinó que su precio podría ser aún más alto, por las imprecisiones técnicas de su propuesta. El informe demuestra que el Comité tomó en cuenta su propuesta y las aclaraciones que sometió y que determinó que el menor postor, Intergraph, cumplía con las especificaciones.

Ahora bien, hay base en el expediente para el planteamiento de Maxon que la invitación a la licitación hacía no respondiente al licitador que sometiera términos y condiciones de venta o servicios. Así lo estableció específicamente la invitación a requerimiento de propuesta LJA 36773, con alusión particular al Artículo 24 del Reglamento. Este último dispone, en lo pertinente:

*"Cualquier propuesta que tenga material... y toda la expresión, que pueda cualificar con el propósito de reducir la responsabilidad legal (contractual o no contractual) de los licitadores, aumentando la responsabilidad de la Autoridad y que de esta forma que intente imponer las condiciones y política de venta al licitador, se declarará no respondiente."*

Esa disposición se hizo formar parte de la invitación a la propuesta y la A.E.E. no nos ha demostrado bajo cuáles normas de las que rigieron este proceso se podía prescindir de la misma. No empece la claridad de dicha cláusula, la resolución recurrida y la A.E.E. en su oposición consideran que no mediaron expresiones cualificativas o de cambios en la propuesta, sino excepciones sujetas a negociación.

Las excepciones tomadas por Intergraph consistieron, en apretada síntesis, en las siguientes:

*"(1) En cuanto al Artículo 6 (c) del contrato, sobre las fianzas de ejecución y de pago, indicó que aunque sometió el precio de las fianzas según requerido "request that the percentage for the Data Conversion and Payment Bonds be lower".*

*(2) Sobre el Artículo 10, en cuanto al derecho de la A.E.E. de tomar posesión del trabajo parcial o completo, aun cuando el término para completarlo no hubiese expirado, Intergraph expresó: "Intergraph will comply as long as PREPA'S right under this article do not have pricing and scheduling implications to Intergraph and its subcontractors".*

*(3) En cuanto a las penalidades por demora, indicó: "Intergraph disagrees with penalties for delays but request additional discretion during the contract negotiation to reach an agreement satisfactory to both parties".*

*(4) Sobre el derecho de la A.E.E. a daños compensatorios por negligencia, objetó de la siguiente manera: "Intergraph wishes to clarify that upon replacement of the damaged or lost software PREPA shall not have the right to seek compensatory damages".*

*(5) Respecto al Artículo 14 sobre responsabilidad y daños incidentales, Intergraph tomó excepción, expresó estar dispuesta a discutirlo para comprender sus implicaciones y señaló que al obtener esa información: "Intergraph will be able to obtain the cost associated with providing additional insurance coverage for the risk that Intergraph may wish to pass on to PREPA".*

Como puede captarse, contrario al requerimienro del Artículo 24 del Reglamento incluido en la invitación a los licitadores, Intergraph incluyó en su propuesta expresiones cualificativas que pudieron representar aumento en el precio licitado y acarrear reducción de la responsabilidad legal de la licitadora. Los renglones sobre los que tomó excepciones no son asuntos menores, como los consideró el comité evaluador, sino que se refieren a fianzas, derechos de la A.E.E. a tomar posesión del trabajo, penalidades por demora y responsabilidad legal de la licitadora por daños.

Como antes señalado, no hemos encontrado guías o normas que ilustraran a los licitadores sobre la posibilidad de negociar cláusulas que la A.E.E. había determinado no eran negociables. Esa situación de ausencia de guías o normas provocó los planteamientos que se traen en el recurso en cuanto a desviaciones de las especificaciones.

En la resolución recurrida se hace referencia a estatutos federales para concluir que el proceso de adquisición de bienes y/o servicios por negociación es *"totalmente válido"*. No obstante, es menester señalar que esos estatutos federales contemplan las circunstancias y los requisitos bajo los que se dará ese proceso de negociación. Por ejemplo, en las disposiciones federales relativas a *"procurement provisions",* se requiere que al preparar propuestas competitivas, además de las especificaciones, la invitación debe contener como mínimo, *"una declaración de que las propuestas se evaluarán con, y las adjudicaciones se harán después de, discusiones con los licitadores pero pueden ser evaluadas y adjudicadas sin discusiones con los licitadores, y el término y sitio para someter las propuestas".* (Traducción nuestra). 41 U.S.C.A. 253 a (b) (2) (B). También, que la evaluación de las propuestas competitivas se basará sólo en los factores especificados en la invitación. 41 U.S.C. A. 253 b (a). Además, existen disposiciones específicas, entre otras, sobre las discusiones con los licitadores, previo a la adjudicación del contrato, que permiten se obvie la discusión cuando se demuestra que la propuesta resultará en la más beneficiosa para el gobierno. 41 U.S.C.A. 253 b(d) (1) (A) (B) (2) (3) (4).

Otra de las fuentes federales contempla las circunstancias en que se puede negociar por contratación y da como ejemplo *"in adquisitions where the requirement is clearly definable and the risk of unsuccesful contract performance is minimal, cost or price may play a dominant role in source selection. 48 C.F.R. 15.101."*

De la misma forma, el *"Competitive in Contracting Act"* (C.I.C.A.) contempla los factores y criterios específicos que se tomarán en cuenta para los procesos competitivos por negociación. 10 U.S.C. sec. 2304 (b) (1) (c), y siguientes.

Así, pues, no tan sólo esos estatutos federales específicamente disponen para procesos competitivos por negociación, sino que dictan pautas a seguir para su adjudicación, de forma que se logre la mayor competencia y se protejan los intereses gubernamentales.

En nuestro caso, como la ley no contempla ese proceso competitivo por negociación, éste se basó en la necesidad reconocida por la Junta mediante resolución. Pero era necesario que se establecieran normas que

proveyeran guías que pautaran asuntos tales como las clarificaciones de las propuestas, las discusiones con los licitadores o su excepción, negociación previa a la adjudicación, si necesaria, cuáles cláusulas no estarían o estarían sujetas a negociación aun cuando las partes tomaran excepciones, si la negociación debía ser previa a la adjudicación de la propuesta, especificación de las fases del sistema y cómo se adjudicarían, entre otros asuntos. [2] La A.E.E. erró al no proveer bases claras para ese proceso de negociación con los licitadores. En conclusión, la ausencia de normas procesales claras propició los planteamientos que consideramos en este recurso y los cuestionamientos que formulamos en cuanto a si se permitía el relevo de cláusulas fundamentales para la A.E.E, si los licitadores estaban debidamente informados de los parámetros adecuados para que el proceso fuera verdaderamente competitivo y si se protegían debidamente los intereses públicos.

Ahora bien, debemos resolver si esa falta de guías o criterios, en un proceso en el cual se adjudicó una propuesta de precios antes de concluida la negociación con uno de los licitadores, afectó el trato justo debido a otro licitador o fue contra los intereses de la agencia. Es particularmente relevante a los mejores intereses de la agencia la cuestión en cuanto a las excepciones tomadas por Intergraph.

En cuanto al trato justo debido a Maxon, hemos expresado que éste no demostró cómo su propuesta era más favorable a la A.E.E. si se le hubiese permitido tomar las excepciones que formuló Intergraph. En cuanto a la protección de los intereses públicos, aun cuando Maxon tomó excepciones en elementos fundamentales que pudieron ser perjudiciales para la A.E.E. en cuanto a responsabilidad legal y riesgos, el contrato se firmó con las cláusulas de protección requeridos. Por tanto, no es procedente que intervengamos a esta etapa con la adjudicación efectuada, sino para dejar establecido que en materia de adquisición de bienes o servicios por el Gobierno, cuando, como en este caso, se trata de servicios que envuelven sumas cuantiosas de dinero público, de gran especialización y tecnología, a ser adquiridos por medios fuera del proceso reglamentado de subastas, las guías y normas que regirán el proceso deben ser precisas, claras y de conocimiento de todas las partes. De esa forma se garantiza un proceso equitativo y se vela por los mejores intereses gubernamentales.

## IV

En virtud de todo lo anterior, por no haber demostrado la recurrente un trato injusto o que el proceder de la A.E.E. en este proceso fue en detrimento de los mejores intereses públicos, determinamos no intervenir en la adjudicación del contrato a Intergraph, debiendo la A.E.E. tomar en cuenta nuestros señalamientos sobre la forma en que el proceso debió llevarse a cabo.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 196

1. Por no contar con ésta, desconocemos las bases legales en que se apoyó, las que tampoco nos indica la A.E.E. en sus comparecencias.

2. No empece lo indicado en la resolución sobre la adjudicación de las fases I y II, el contrato hizo referencia a las cuatro fases, tal como licitaron las compañías.